UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWIN D. T.,[1]<br><br>              Petitioner,<br><br>    v.<br><br>KILOLO KIJAKAZI, Acting<br>Commissioner of Social Security<br>Administration,[2]<br>                Respondent. | Case No. 1:21-cv-00204-DKG<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## INTRODUCTION

Petitioner brought this matter for judicial review of Respondent's denial of his application for supplemental social security income. (Dkt. 1.) The Court has reviewed the Petition for Review, the parties' memoranda, and the administrative record (AR). For the reasons set forth below, the Court will remand the decision of the Commissioner.

---

[1] Petitioner's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security Administration on July 9, 2021.

**MEMORANDUM DECISION AND ORDER - 1**

## BACKGROUND

On May 28, 2019, Petitioner protectively filed a Title II application for a period of disability and disability insurance benefits. (AR 224.)[3] The application alleges a disability onset date of July 22, 2016. (AR 224.) Petitioner's application was denied upon initial review and on reconsideration. (AR 13.) A hearing was conducted on June 12, 2020, before Administrative Law Judge (ALJ) Stephen Marchioro. (AR 13.)

After considering testimony from Petitioner and a vocational expert, the ALJ issued a written decision on October 23, 2020, finding Petitioner has not been under a disability since July 22, 2016. (AR 13-26.) The Appeals Council denied Petitioner's request for review on March 4, 2021, making the ALJ's decision final. (AR 1-3.) Petitioner timely filed this action seeking judicial review of the ALJ's final decision on May 7, 2021. (Dkt. 1.) The Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

On the date last insured, Petitioner was forty-nine years of age. (AR 25.) Petitioner completed the tenth grade and has past relevant work experience as a composite job of an auto salesperson, auto dealer, lot attendant, and loan clerk. (AR 24, 282.) Petitioner claims disability due to back injury, rheumatoid arthritis, arthritis, chronic pain, depression, failed back syndrome, and carpal tunnel. (AR 281.)

---

[3] Petitioner filed a previous application for benefits dated July 21, 2016, which was denied. (AR 14.) Thus, the relevant time period for the application for disability benefits that is the subject of the Petition for review presently before the Court runs from the alleged onset date of July 22, 2016, to the date last insured of December 31, 2017.

# THE ALJ'S DECISION

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 404.1520; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

Here, at step one, the ALJ found Petitioner had not engaged in substantial gainful activity since the alleged onset date. (AR 16.) At step two, the ALJ determined Petitioner suffers from the following medically determinable severe impairments: degenerative disc disease status post fusion, peripheral neuropathy, rheumatoid arthritis, carpal tunnel syndrome, depression, and obesity. (AR 16.) The ALJ concluded Petitioner's hypogonadism, hyperlipidemia, and hypertension were not severe. (AR 17.) Further, the ALJ found Petitioner's left shoulder bursitis and restless leg syndrome were not medically determinable impairments and, alternatively, were non-severe. (AR 17.)

At step three, the ALJ determined that, through the date last insured, Petitioner did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 17-19.) The ALJ next found Petitioner retained the Residual Functional Capacity (RFC) for sedentary work with the following limitations:

[C]laimant is occasionally able to operate foot controls with the bilateral lower extremities. The claimant can never climb ladders, ropes, and scaffolds, but he can occasionally…climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant must avoid all exposure to unguarded mechanical parts and unprotected heights, but is able to have occasional exposure to extreme heat, cold, and vibrations. The claimant is occasionally able to reach overhead with the bilateral upper extremities, and frequently able to handle and finger with the bilateral upper extremities. Finally, the claimant is limited to unskilled work, such as simple routine tasks.

(AR 19, 22.)

At step four, the ALJ found Petitioner was unable to perform any past relevant work. (AR 24.) Relying upon testimony from the vocational expert, the ALJ concluded at step five that jobs exist in significant numbers in the national economy that Petitioner can perform given his age, education, work experience, and RFC, such as: food and beverage clerk, charge accountant, and document preparer. (AR 26.) The ALJ therefore determined Petitioner was not disabled at any time from July 22, 2016, the alleged onset date, through December 31, 2017, the date last insured.

## ISSUES FOR REVIEW

1.    Whether the ALJ properly evaluated the medical opinion evidence.

2.    Whether the ALJ properly accounted for Petitioner's mental limitations in the RFC determination and the hypotheticals posed to the vocational expert.

**MEMORANDUM DECISION AND ORDER - 4**

## STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error, or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This requires "more than a mere scintilla" of evidence. *Id*.

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). It must weigh both the evidence that supports, and the evidence that does not support, the ALJ's conclusion. *Id*.

If the ALJ's decision is based on a rational interpretation of conflicting evidence, the Court will uphold the ALJ's finding. *Carmickle v. Comm'r of Soc. Sec. Admin*., 533 F.3d 1155, 1165 (9th Cir. 2008). It is unnecessary for the ALJ to "discuss all evidence presented." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must, however, explain why "significant probative evidence has been rejected." *Id*.

## DISCUSSION

### 1.    Medical Opinion Evidence

Petitioner assigns error to the ALJ's evaluation of the opinions of Warren Dopson, M.D., and Richard Jaslow, M.D. (Dkt. 20, 22.) Respondent maintains the ALJ properly considered the medical opinion evidence and explained the bases for his evaluations of the opinions as required by the current regulations applicable here. (Dkt. 21.)

A.      **Legal Standard**

The Commissioner revised the regulations applicable to the evaluation of medical

evidence for disability applications filed on or after March 27, 2017. *See* Revisions to

Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18,

2017).[4] These regulations changed how the Commissioner evaluates medical opinions

and prior administrative medical findings by eliminating the use of the term "treating

source," as well as what is customarily known as the treating source or treating physician

rule. *See* 20 C.F.R. § 404.1520c(a). Instead, the regulations currently provide that the

Commissioner "will not defer or give any specific evidentiary weight . . . to any medical

opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §

404.1520c(a).

Under the revised regulations, the ALJ must consider and evaluate the

persuasiveness of all medical opinions or prior administrative medical findings from

medical sources according to the following factors: supportability; consistency;

relationship with the claimant (including length of the treatment, frequency of

examinations, purpose of the treatment, extent of the treatment, and the existence of an

examinations); specialization; and other factors such as the medical source's familiarity

with other evidence in the record or with disability program requirements. 20 C.F.R. §

404.1520c(c)(1)-(5). The ALJ's duty to articulate a rational for each factor varies. 20

---

[4] Petitioner filed his application on May 28, 2019, therefore the revised regulations apply here.

C.F.R. § 404.1520c(a)-(b).

Supportability and consistency are the most important factors and, therefore, the ALJ must explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). The supportability factor looks inward at the medical opinion's bases; "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)…, the more persuasive the medical opinions…will be." 20 C.F.R. § 404.1520c(c)(1). The consistency factor, on the other hand, looks outward, comparing the opinion to the other evidence in the record; "[t]he more consistent a medical opinion(s)…is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ needs to address only the remaining factors - treatment relationship, specialization, and any other factors - when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3) (Where "two or more medical opinions…about the same issue are both equally well-supported…and consistent with the record…but are not exactly the same.").

The ALJ is required to "articulate ... how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 404.1520c(b). "The 'more relevant the objective medical evidence and supporting explanations presented' and the 'more consistent' with evidence from other sources, the more persuasive a medical opinion or prior finding." *Carmen Claudia S. v. Saul*, 2021 WL 2920614, at *8 (C.D. Cal. July 9, 2021) (quoting *Robert S. v. Saul*, 2021

WL 1214518, at *3 (D. Or. Mar. 3, 2021)). "In sum, the Commissioner must explain his [or her] reasoning and specifically address how he [or she] considered the supportability and consistency of the opinion, and his [or her] reasoning must be free from legal error and supported by substantial evidence." *Id.* (quoting *Titus L. S. v. Saul*, 2021 WL 275927, at *7 (C.D. Cal. Jan. 26, 2021)) (citations omitted). With these regulations and considerations in mind, the Court will proceed to its analysis.

### B.    Analysis

#### 1.    Dr. Dopson

Dr. Dopson, Petitioner's treating physician, provided a physical medical source statement dated January 25, 2016. (AR 865-872.)[5] Dr. Dopson diagnosed Petitioner with rheumatoid arthritis, chronic back pain, and depression. He identified clinical findings and objective signs of "intermittent joint swelling" in Petitioner's hands and feet, and muscle spasms in the low back. (AR 865.) Dr. Dopson opined that Petitioner could sit and stand for twenty minutes at one time before needing to get up; could sit, stand, and walk for less than two hours total in an eight-hour workday; would need a job that permits shifting-positions from sitting, standing, or walking; would need unscheduled breaks two to three times a day for an average of thirty to forty-five minutes due to pain; and required an assistive device for occasional standing/walking.  (AR 866.) Dr. Dopson found Petitioner could occasionally lift less than ten pounds, rarely lift ten pounds, and

---

[5] The Administrative Record appears to contain duplicate copies of Dr. Dopson's January 25, 2016 report. (AR 865-872) (B18F and B19F). The Court will cite to only the first report – AR 865-868, B18F - in this Memorandum Decision and Order for ease of reference.

never lift any thing heavier; could rarely twist or stoop, never crouch/squat or climb

ladders, and occasionally climb stairs; had significant limitations with reaching, handling,

or fingering; would be off task in excess of 25 percent of a workday; and would be absent

from work more than four days per month. (AR 867.) Finally, Dr. Dopson noted

Petitioner is "capable of low stress work" and his "depression limits cognitive function."

(AR 868.)

      The ALJ found "the medical opinions issued prior to the alleged onset date [which

includes Dr. Dopson's opinion,] to be non-persuasive, because they are remote and do not

address the period at issue. [ ] Moreover, these opinions are inconsistent with the overall

record." (AR 24) (citing B18F-B19F). As to Dr. Dopson's opinion specifically, the ALJ

concluded:

> The opinion of Warren Dopson, M.D., is not supported by his internal
> treatment records, which note that only a few months after he submitted his
> medical source statement, the claimant had findings of musculoskeletal
> tenderness, edema, and limited range of motion, but otherwise normal
> strength and ambulation, and only mild to moderate level of distress.

(AR 24.) In making this finding, the ALJ cited Dr. Dopson's report as well as the

following individual treatment records: B18F-B19F, B21F/13, 17, 20, 23, 26. Notably,

the treatment records cited by the ALJ are from office visits occurring after Dr. Dopson

issued his opinion and during the time period relevant to the application for disability

benefits at issue here. (AR 24.)

      Petitioner argues the ALJ failed to properly consider Dr. Dopson's opinion by

discussing the supportability and consistency factors as required by the regulations. (Dkt.

20.) Petitioner maintains Dr. Dopson's treatment notes support his opinion and his

**MEMORANDUM DECISION AND ORDER - 9**

opinion is consistent with other examining medical providers' findings and objective evidence in the record. Further, Petitioner asserts the ALJ failed to explain his reasoning. The Court finds no error in the ALJ's consideration of Dr. Dopson's opinion.

The ALJ properly addressed the supportability and consistency factors by expressly concluding that Dr. Dopson's opinion was inconsistent with the overall record and unsupported by his own internal treatment notes. (AR 24.) The ALJ explained his reasoning and the bases for finding the opinion non-persuasive. *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) (An ALJ's reasoning is upheld where it can "reasonably be discerned."). The ALJ provided an accurate and complete discussion of the overall record in the prior sections of the written decision, which the Court finds clearly informed the ALJ's evaluation of Dr. Dopson's opinion. (AR 17-24.) Contrary to Petitioner's assertion, the ALJ's discussion of Dr. Dopson's opinion cited particular treatment notes by Dr. Dopson showing Petitioner had "musculoskeletal tenderness, edema, and limited range of motion, but otherwise normal strength and ambulation, and only mild to moderate level of distress." (AR 24.)

The Court finds the ALJ's evaluation of the record and Dr. Dopson's opinion are supported by substantial evidence. That Petitioner disagrees with the ALJ's view of the record is not a basis for remand. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

Additionally, the ALJ found Dr. Dopson's opinion non-persuasive because it was issued prior to the alleged onset date and, therefore, did not address the time period at

issue. (AR 24.) That the opinion predated the alleged onset date is a relevant

consideration. *Carmickle*, 533 F.3d at 1165 (Medical opinions that predate the relevant

period are of limited relevance.); *Fair v. Bowen*, 885 F.2d 594, 600 (9th Cir. 1989). This

is particularly true where, as here, Petitioner had filed a prior application for benefits

which was denied and not reopened. (AR 14.)

  While the ALJ concluded that Petitioner had rebutted the presumption of

continuing non-disability for the unadjudicated period of the newly filed application, the

ALJ found no reason to reopen the prior application and that administrative finality

applies through July 21, 2016. Thus, the ALJ did not err in discrediting Dr. Dopson's

January 25, 2016 opinion because it did not address the period at issue. (AR 24.) In any

event, as discussed above, the ALJ appropriately considered the relevant records,

including the evidence from the prior adjudicated time period, in accordance with the

applicable regulations. Accordingly, the Court finds no error in the ALJ's evaluation of

Dr. Dopson's opinion.

### 2. Dr. Jaslow

  The ALJ employed Dr. Jaslow as a second medical expert to review Petitioner's

medical records and offer an opinion. (AR 23.) Dr. Jaslow issued a report dated July 31,

2020, concluding Petitioner's physical impairments did not meet or equal any listing.

(AR 989-992.) The ALJ found Dr. Jaslow's opinion persuasive, stating:

> [I]t is well-supported by Dr. Jaslow's analysis of the medical evidence of
> record. Specifically, the medical expert explained that the consultative
> examination taken indicated that the claimant's range of motion of the
> lumbar spine is markedly limited with flexion of 30 degrees and extension
> of 0 degrees. However, the claimant was also able to dress and undress

**MEMORANDUM DECISION AND ORDER - 11**

himself without problems, which the medical expert opined was
inconsistent with the claimant's alleged limitations in range of motion,
suggesting symptom magnification during the examination. Dr. Jaslow also
indicated that the claimant complained of pain with range of motion with
every joint and every muscle tested for strength, which led Dr. Jaslow to
further question the validity of the degree of the claimant's subjective
complaints. Because Dr. Jaslow was unable to identify any objective
evidence of medical signs to support a diagnosis of nerve root
impingement/compromise, arachnoiditis, or lumbar stenosis with
pseudoclaudication, and because the claimant's diagnostic findings post
fusion surgery actually confirmed that the claimant's fusion is solid, the
undersigned is in agreement with Dr. Jaslow's opinion that the claimant
does not meet listing 1.04 or any other listing of impairments.

(AR 23-24) (citations omitted). However, the ALJ found the portion of Dr. Jaslow's

opinion regarding the September 2013 opinion of Kenneth Little, M.D., was of limited

persuasive value, because Dr. Little's assessment was remote in time and rendered prior

to the allege onset date. (AR 24.)

Petitioner argues the ALJ erred in finding Dr. Jaslow's opinion persuasive without

considering that it was internally flawed and inconsistent with the opinions of other

medical sources. (Dkt. 20, 22.) The Court finds the ALJ properly evaluated Dr. Jaslow's

opinion.

As to supportability, the ALJ found Dr. Jaslow's opinion "well-supported" by his

analysis of the medical evidence of record. (AR 23.) Specifically, the ALJ discussed Dr.

Jaslow's consideration of the consultative examination by Michael O. Sant, M.D., and the

neurological assessment of Dr. Little. (AR 23-24.) The ALJ's explanation in this regard is

well-reasoned and supported by substantial evidence.

Dr. Jaslow's opinion was not internally flawed, as Petitioner argues. (Dkt. 20, 22.)

Nor does the fact that the ALJ found a portion of Dr. Jaslow's opinion of "limited

persuasive value," create an internal inconsistency in the opinion or the ALJ's decision. The ALJ reasonably concluded the objective evidence contained in Dr. Little's assessment showing Petitioner's fusion was "solid," supported Dr. Jaslow's opinion that Petitioner's impairments did not meet any of the listings. (AR 17, 23-24.) The ALJ then articulated his reasoning for giving limited persuasive value to the portion of Dr. Jaslow's characterizing Dr. Little's opinion as an "excellent" assessment. (AR 24.) As the ALJ observed, Dr. Little's 2013 assessment that Petitioner could perform a range of medium work was remote in time and rendered prior to the alleged onset date. Unlike the objective evidence showing Petitioner's back fusion repair was "solid" following the surgical repair, Dr. Little's 2013 opinion that Petitioner was able to carry on medium level work had limited value given it was rendered almost three years before the alleged onset date. *Carmickle*, 533 F.3d at 1165. The Court finds the ALJ's reasoning on these two points was well explained, internally consistent, and supported by substantial evidence.

Petitioner's other arguments disagreeing with Dr. Jaslow's opinion, and arguing instead in favor of Dr. Sant's examination, do not establish error by the ALJ. (Dkt. 20 at 20-21.) Dr. Jaslow did not, as suggested by Petitioner, take Dr. Sant's examination report out of context by stating Petitioner was able to dress/undress himself and get on/off the exam table "without difficulty/problems" as opposed to "unassisted." (Dkt. 20 at 20.)[6]

---

[6] Dr. Sant's report states Petitioner was able to dress/undress himself and get on/off the examination table "unassisted." (AR 878.) Dr. Jaslow's opinion states he was able to perform (Continued)

Regardless of whether Petitioner was able to perform these tasks "without difficulty," "without problems," or "unassisted," Dr. Jaslow's opinion questioning the validity of the examination is supported by his finding that it would be impossible for Petitioner to perform these tasks if his spine flexion was as limited as he complained of during the exam. (AR 991.)

Notably, Dr. Jaslow recognized that Petitioner may not be pain free. (AR 991) ("I am NOT saying this claimant has no pain. What I am saying is that any assessment of RFC in this individual should be based strictly on objective evidence."). Dr. Jaslow's opinion on this point was simply that Petitioner's subjective statements concerning his limitations and pain were unreliable. Dr. Jaslow explained that Petitioner's complaints of pain with every joint and muscle tested across the board, led him to disbelieve Petitioner's subjective statements. Consequently, Dr. Jaslow concluded any RFC assessment should be based strictly on objective evidence.

As to consistency, the Court finds the ALJ properly considered the extent to which Dr. Jaslow's opinion was consistent with the evidence from other medical sources and nonmedical sources. 20 C.F.R. § 404.1520c(c)(2). The ALJ contrasted Dr. Jaslow's findings with the findings of the first medical expert, Omar Hussamy, M.D., at step three and again later in the written decision's discussion of the medical opinions. (AR 17, 23) (concluding Dr. Hussamy's opinion was "inconsistent with the subsequent medical

---

these tasks "without problems." (AR 991.) Petitioner's brief mis-quotes Dr. Jaslow's report by stating he used the terms "without difficulty." (Dkt. 20 at 20.)

expert's opinion (discussed below) [Dr. Jaslow], who provided a more detailed explanation for his opinions. The undersigned notes that the subsequent medical expert saw all of the evidence, including Dr. Hussamy's two responses, in formulating his own opinion.").

As to Drs. Sant and Dopson, the ALJ found both opinions non-persuasive as they were issued prior to the alleged onset date and, therefore, did not address the relevant time period. (AR 24.) The ALJ specifically concluded that Dr. Sant's opinion was inconsistent with Dr. Jaslow's analysis, because Dr. Sant failed to address the discrepancy between the findings of marked limitations in lumbar range of motion and Petitioner's ability to get dressed and get on and off the examination table without difficulty. (AR 24.)

For the reasons stated above, the Court finds the ALJ properly evaluated the opinion of Dr. Jaslow consistent with the applicable regulations. The ALJ addressed the supportability and consistency factors and explained his reasoning. While Petitioner views the record differently and would conclude otherwise, the ALJ's decision is supported by substantial evidence. Accordingly, the Court finds the ALJ did not err in his assessment of the medical opinion evidence.

## 2.    Mental Limitations in the RFC Determination and the Hypotheticals

Petitioner argues the ALJ erred by failing to incorporate the mental limitations found at step three, into the RFC determination and the hypotheticals posed to the vocational expert. (Dkt. 20, 22.) Respondent maintains the ALJ's findings regarding Petitioner's mental limitations are properly reflected in the RFC determination and the

hypotheticals. (Dkt. 21.)

### A.  Legal Standard

Residual functional capacity (RFC) is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). The ALJ must consider all relevant evidence in the record and all of a claimant's medically determinable impairments, whether severe or not, when assessing a RFC. *See Carmickle*, 533 F.3d at 1164; *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); 20 C.F.R. § 404.1545(a)(2) and (3). The RFC finding must be supported by substantial evidence in the record and the ALJ must explain their reasoning underlying the RFC. 42 U.S.C. § 405(b); 20 C.F.R. § 404.1520c.

The ALJ is responsible for resolving conflicts in the medical testimony and translating the claimant's impairments into concrete functional limitations in the RFC. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008); *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). Only limitations supported by substantial evidence must be incorporated into the RFC and, by extension, the dispositive hypothetical questions posed to the vocational expert. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163–65 (9th Cir.2001). However, the hypothetical questions "must set out all the limitations and restrictions" of the Petitioner. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Embrey v. Bowen*, 849 F.2d 418, 422

**MEMORANDUM DECISION AND ORDER - 16**

(9th Cir. 1988) (emphasis in original)). "If the hypothetical does not reflect all the [petitioner]'s limitations, ... the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (citations omitted).

## B.   Analysis

At step three, the ALJ assessed Petitioner with mild limitations in understanding, remembering or applying information, and in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintain pace, noting Petitioner's allegations concerning these problems appeared to be related to his pain rather than his mental impairment; and no limitation in adapting or managing oneself. (AR 18-19.)[7] Thus, the ALJ concluded Petitioner's mental impairment did not meet or medically equal the criteria of listing 12.04. In determining the RFC, the ALJ reviewed the record related to Petitioner's mental impairments and concluded Petitioner was capable of performing "unskilled work, such as simple routine tasks." (AR 19, 22) ("[D]ue to the claimant's mental impairments, as well as concentration difficulties from pain, the claimant is limited to unskilled work, such as simple routine tasks.").

---

[7] When evaluating the severity of mental impairments at steps two and three, the ALJ rates the claimant's degree of functional limitation across the following four broad domains: (i) understanding, remembering, and applying information, (ii) interacting with others; (iii) concentrating, persisting, and maintaining pace; and (iv) adapting or managing oneself. 20 C.F.R. § 404.1520a(b-d). These areas are commonly referred to as the "paragraph B" criteria. (AR 18-19.) The ALJ must rate the claimant's degree of limitation in these areas using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). The ALJ then determines the severity of any mental impairment and, if severe, will determine whether it meets or is equivalent in severity to a listing mental disorder. 20 C.F.R. § 404.1520a(d).

**MEMORANDUM DECISION AND ORDER - 17**

During the hearing, the ALJ asked the vocational expert whether a hypothetical person with Petitioner's physical RFC would be able to perform Petitioner's past work. The vocational expert responded in the negative. (AR 65-66.) The ALJ then asked whether there would be any other jobs at the sedentary exertional level in the competitive, national economy that a person with this hypothetical profile could perform. (AR 66.) In doing so, the ALJ limited the vocational expert's responses to unskilled work, but did not include any mental limitations in the hypothetical – specifically, moderate limitations for maintaining concentration, persistence or pace. (AR 66.) Thus, the ALJ's RFC determination and hypotheticals limited Petitioner to unskilled work to account for his mental limitations.

The issue presented here is whether the ALJ's limitation to "unskilled work, such as simple routine tasks" sufficiently translates Petitioner's mental impairments into functional limitations in the RFC and the hypotheticals. Respondent relies on *Stubbs-Danielson* as support for the assertion that the ALJ's decision limiting Petitioner to unskilled work accounts for the step three findings of moderate limitations in concentration. (Dkt. 21 at 14.) However, *Stubbs-Danielson* is distinguishable.

In *Stubbs-Danielson*, the Ninth Circuit held that "[a]n ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, and pace where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs–Danielson*, 539 F.3d at 1174. In *Stubbs–Danielson*, the ALJ relied on medical testimony establishing that the petitioner retained the ability to perform simple tasks notwithstanding some evidence that the petitioner had deficiencies in pace. *Id.* Based on

**MEMORANDUM DECISION AND ORDER - 18**

the fact that there was medical testimony to support the ALJ's assessment, the Ninth Circuit found no err in the ALJ's conclusion that the petitioner retained the RFC to perform simple, routine work. *Id.* at 1173-75 ("The ALJ translated Stubbs-Danielson's condition, including the pace and mental limitations, into the only concrete restrictions available to him—Dr. Eather's recommended restriction to 'simple tasks.'").

In contrast, the ALJ here did not rely on medical evidence in the record to establish that Petitioner was capable of unskilled work despite his moderate limitation in concentration, persistence, or pace. Indeed, the ALJ observed that "the record is devoid of treatment notes from a mental health specialist" and the record generally shows normal mental status fundings. (AR 21.) Nonetheless, the ALJ concluded Petitioner had "some degree of functional limitation" due to mental impairments and then assessed an RFC limiting Petitioner to unskilled work without any supporting medical evidence. (AR 21.) This was error as "the ALJ was not qualified to make the determination that a limitation to unskilled work adequately captured his finding of a moderate limitation with regard to concentration, persistence, or pace." *Smith v. Berryhill*, 2018 WL 6062463, at *4 (S.D. Cal. Nov. 20, 2018); *Kramer v. Kijakazi*, 2022 WL 873630, at *14 (S.D. Cal. March 24, 2022) (finding error where the ALJ's determination of a moderate limitation in concentration, persistence, or pace was not supported by a medical opinion) (citing cases; *Francisco D. v. Saul*, 2020 WL 3448085 (D.Or. June 24, 2020).

The Court finds that upon the record in this case, the limitation to "unskilled work," without more, was insufficient to incorporate the Petitioner's moderate limitation on concentration, persistence, or pace. *See Lubin v. Comm'r Soc. Sec. Admin.*, 507 F.

App'x 709, 712 (9th Cir. 2013) ("Although the ALJ found that Lubin suffered moderate difficulties in maintaining concentration, persistence, or pace, the ALJ erred by not including this limitation in the residual functional capacity determination or in the hypothetical question to the vocational expert.... Limiting Lubin 'to one to three step tasks due to pain and prescription drug/marijuana use' did not capture the limitation in concentration, persistence, or pace found by the ALJ."); *Brink v. Comm'r Soc. Sec. Admin.*, 343 Fed. App'x 211, 212 (9th Cir. Aug. 18, 2009) (rejecting Commissioner's contention that the phrase "simple, repetitive work" encompasses difficulties with concentration, persistence or pace); *Depew v. Colvin*, 2016 WL 3344572, at *7 (W.D. Wash. June 16, 2016) ("[A] limitation to unskilled work, without more, is insufficient to incorporate a claimant's moderate limitations in concentration, persistence and pace, nor does it "address whether a job entails only simple, repetitive tasks."); *Doty v. Astrue*, 2014 WL 1269479, at *3 (D.Or. Mar. 26, 2014) ("Unskilled work, by itself, does not adequately capture plaintiff's 'moderate limitation' with regard to concentration, persistence and pace."); *Juarez v. Colvin*, 2014 WL 1155408, *7 (C.D. Cal. Mar. 20, 2014) (finding that because the ALJ expressly found moderate limitations in concentration, persistence, and pace, "the ALJ's RFC determination should have included not only the limitation to unskilled work, but also a moderate limitation in maintaining concentration, persistence, and pace").

The ALJ therefore erred by failing to incorporate Petitioner's mental limitations in the RFC determination and the hypotheticals posed to the vocational expert. *Kramer*, 2022 WL 873630, at *14; *Smith*, 2018 WL 6062463, at *4; *Brink*, 343 F. App'x at 212

("The hypothetical question to the vocational expert should have included not only the limitation to "simple, repetitive work," but also Brink's moderate limitations in concentration, persistence, or pace."). The RFC determination and the hypotheticals posed to the vocational expert were therefore flawed. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective.").

Because the ALJ failed to incorporate Petitioner's recognized mental limitations into the RFC determination and the hypothetical questions posed to the vocational expert, the Court finds the ALJ erred in relying upon the vocational expert's testimony to conclude there were significant jobs in the economy that Petitioner could perform. *Flores v. Shalala*, 49 F.3d 562, 570 (9th Cir. 1995) (finding that a hypothetical question posed to a vocational expert must "include all of the claimant's functional limitations, both physical and mental"); *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) ("If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the ... testimony has no evidentiary value [.]" (citations and internal quotation marks omitted)).

The error was not harmless. The vocational expert testified that, based on the ALJ's incomplete hypothetical question, Petitioner could perform work as a food and beverage clerk, charge accountant, and document preparer. (AR 66-67.) The ALJ relied on that testimony in making the step five finding and concluding Petitioner was not disabled. (AR 25-26.) However, it is unknown whether the vocational expert would have concluded that a person with a moderate limitation in concentration, persistence, or pace could perform the identified occupations.

**MEMORANDUM DECISION AND ORDER - 21**

While the jobs involve unskilled work, it is possible they involve tasks requiring sustained concentration and the ability to work at a constant pace. For instance, a food and beverage clerk is required to take and record orders on a ticket with a time stamp to ensure prompt service, distribute tickets to kitchen employees, may collect payment, and may keep records of the transaction. *See* DOT #209.567-014. A document preparer performs a variety of tasks, including: preparing documents for processing using a number of different devices and machines; prepares a cover sheet, document folder, and index card to identify the materials; and inserts the material into the folder and files the folder for processing according to the index code and priority schedule. *See* DOT #249.587-018.

Without the benefit of the vocational expert's testimony, it is unclear whether the moderate limitations on Petitioner's ability to maintain concentration, persistence, or pace would render him unable to perform the jobs identified by the vocational expert. Therefore, the ALJ harmfully erred in relying on the vocational expert's testimony to conclude Petitioner can perform jobs available in the national economy. *DeLorme*, 924 F.2d a 850 ("If the hypothetical does not reflect all the claimant's limitations, we have held that the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.").

## 3.     Remand For Additional Proceedings is Appropriate

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further

**MEMORANDUM DECISION AND ORDER - 22**

administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id*. at 1179 ("[T]he decision of whether to remand for further proceedings turns upon the likely utility of such proceedings."). However, where the circumstances of the case suggest that further administrative review could remedy the Commissioner's errors, remand is appropriate. *McLeod v. Astrue*, 640 F.3d 881, 888 (9th Cir. 2011); *Harman*, 211 F.3d at 1179-81. In general, when the Court reverses an ALJ's decision "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

Here, the ALJ erred in assessing the RFC and failed to present a complete hypothetical to the vocational expert.[8] The circumstances presented in this case suggest that further administrative review could remedy the Commissioner's errors, and there are serious doubts as to whether Petitioner is in fact disabled within the meaning of the Social Security Act. *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014); *McLeod*, 640 F.3d at 888; *Harman*, 211 F.3d at 1179-81. Accordingly, the Court will remand to the Commissioner for further proceedings.

---

[8] As to any issues raised by Petitioner but not addressed herein, the Court finds the ALJ either did not err or the error was harmless.

**MEMORANDUM DECISION AND ORDER - 23**

## **<u>ORDER</u>**

NOW THEREFORE IT IS HEREBY ORDERED:

1)      The Petition for Review (Dkt. 1) be **GRANTED**.

2)      The Commissioner's decision be **REMANDED** for further proceedings

consistent with this opinion; and

3)      Judgment be entered consistent with the above in favor of Petitioner.

DATED: November 4, 2022

Honorable Debora K. Grasham
United States Magistrate Judge